# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CARL PRICE,  
    Plaintiff,

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
    Defendant.

Case No. 1:17-cv-404  
Litkovitz, M.J.

**ORDER**

Plaintiff Carl Price brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 16) and the Commissioner's response in opposition (Doc. 19).

**I. Procedural Background**

Plaintiff filed his application for SSI in February 2013, alleging disability since December 31, 2011 due to borderline intellectual functioning, anxiety, depression, and bipolar disorder. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was afforded a hearing before administrative law judge ("ALJ") Andrew Gollin on February 12, 2016. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On April 6, 2016, ALJ Gollin issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Gollin the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the

claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

ALJ Gollin applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] has not engaged in substantial gainful activity since October 10, 2013, the application date (20 CFR 416.971 *et seq.*).

2. The [plaintiff] has the following severe impairments: borderline intellectual functioning, anxiety, depression, and bipolar disorder (20 CFR 416.920(c)).

3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.927(c) except the [plaintiff] is limited to no more than frequent climbing of ramps and stairs, but no more than occasional ladders, ropes, or scaffolds. The [plaintiff] is limited to no more than occasional overhead reaching bilaterally. The [plaintiff] is limited to no work involving unprotected heights. The [plaintiff] is limited to no work involving the operation of motorized vehicles and no work involving commercial driving. The [plaintiff] is limited to no work involving travel to unfamiliar places. The [plaintiff] is limited to hearing and understanding oral instructions and orally communicating simple information. The [plaintiff] is limited to being able to understand, remember, and carry out instructions involving simple and routine tasks that do not require a fast-paced production rate and do not involve strict production rates [or] quotas. The [plaintiff] is limited to jobs that allow for goal oriented performance rather than production rate. The [plaintiff] is limited to jobs that do not require focused attention for more than two hours at a time. The [plaintiff] is limited to jobs that allow employees to be off task 10% of the day, in addition to regularly scheduled breaks. The [plaintiff] is limited to no more than rare changes in work place settings and workplace duties with advance notice and with demonstrated explanation given for any such [changes], with "rare" being defined as occurring 20% or less of the time. The [plaintiff] is amended [sic] to no interaction with the general public. The [plaintiff] is limited to no more than rare interaction with coworkers, which is

interaction that last[s] ten minutes or less, with "rare" being defined as less than 20% or less of the time. The [plaintiff] is limited to no more than occasional interaction with supervisors. The [plaintiff] can work in proximity to, but not in tandem or as part of a team with coworkers. The [plaintiff] is limited to jobs that do not entail close, over the shoulder type supervision. The [plaintiff] is limited to jobs that do not require reading, writing, math, and/or the ability to make change.

5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[1]

6. The [plaintiff] was born [in] . . . 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[2]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since October 10, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 22-35)

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[1] Plaintiff has past relevant work as an assembler. (Tr. 33).
[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the job requirements of representative light unskilled occupations such as packager (500 jobs regionally and 200,000 jobs nationally), industrial cleaner (1000 jobs regionally and 300,000 jobs nationally), and floor waxer (120 jobs regionally and 120,000 jobs nationally). (Tr. 34-35, 72).

4

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff alleges in his statement of errors that the ALJ erred by: (1) finding that he did not meet or equal Listing 12.05C, and (2) failing to obtain his prior claim file, in which he was awarded benefits from May 1993 to January 1998. (Doc. 16).

### 1. Whether the ALJ erred in finding that plaintiff did not meet or medically equal Listing 12.05C

#### A. Evidence related to plaintiff's intellectual disability

Plaintiff has an eighth-grade education and received special education services throughout school. (Tr. 321-337, 373). At age nine in 1973, plaintiff's school psychologist stated that plaintiff "has a low average ability but his rate of learning is very slow." (Tr. 321). At the time, plaintiff achieved a verbal IQ score of 84, a performance IQ score of 87, and full-scale IQ score of 84. (*Id.*). Plaintiff also read at the kindergarten age level. (*Id.*). The psychologist opined that plaintiff could "profit from tutoring by a tutor for Learning Disabled students if one were available." (Tr. 322). In 1975, when plaintiff was in the sixth grade, he scored at the borderline level on intelligence tests and had reading and spelling skills at the first-to-second grade levels. (Tr. 329). Plaintiff received a verbal IQ score of 74, a performance IQ score of 90, and a full-scale IQ score of 80. (Tr. 330). Plaintiff demonstrated well below average skills in vocabulary, oral arithmetic, verbal abstractions, and general information. (*Id.*). In 1979, when plaintiff was in ninth grade, he received a verbal IQ score of 72, a performance IQ score of 91, and a full-scale IQ score of 80. (Tr. 334). The school psychologist reported that plaintiff could not "cope with verbal tasks requiring memory of facts and ha[d] difficulty dealing with verbal ideas or abstractions." (*Id.*). Plaintiff's reading skills fell between the second and third grade levels. (*Id.*). His arithmetic skills fell between the fourth and fifth grade levels. (*Id.*). The school psychologist also noted that plaintiff was "still dependent on his family for many things such as health care, choice of clothes, and care of clothing." (Tr. 335).

In December 2013, at the age of forty-nine, plaintiff underwent an adult diagnostic assessment with a social worker at LifeSpan Resources, Inc. for his anxiety and depression. (Tr. 381-97). This was the first time that plaintiff sought help for his mental impairments. (Tr. 387).

6

Plaintiff reported that he had difficulties working because he could not handle being around people. (Tr. 382). He reported having experienced depression for the past 4-5 years and possibly longer. (Tr. 385). Plaintiff also reported that he had attempted suicide in the past. (*Id.*). Plaintiff reported problems with anxiety, anger, inattention, mood swings, impulsivity, and alcohol use. (*Id.*). He also reported not having worked for the past six years due to anxiety. (Tr. 388). During the mental status examination, plaintiff exhibited below average intelligence with an impairment in recent memory. (Tr. 386). The social worker assessed social phobia, bipolar disorder, and paranoid personality and recommended a psychiatric evaluation. (Tr. 387).

In March 2013, plaintiff underwent a psychological evaluation with Nicole A. Leisgang, Psy.D., at the request of the state agency. (Tr. 363-69). Plaintiff reported that he had been a special education student who had difficulty with reading, writing, and math. (Tr. 364). Plaintiff stated that he had difficulty maintaining employment because he "can't be around people" and has difficulty understanding work instructions. (Tr. 365). Plaintiff reported recurrent episodes of depression during which time he experiences anhedonia, withdrawal, easy distractibility, and feelings of hopelessness and helplessness. (*Id.*). Plaintiff described himself as "continually anxious" and noted that he did not like people. (*Id.*). Plaintiff stated that he was uncomfortable with crowds and strangers and has difficulty trusting others. (*Id.*). Plaintiff reported no involvement with the mental health system, other than a psychiatric hospitalization "years ago" following a suicide attempt. (*Id.*). During the mental status examination, plaintiff cooperated and established rapport. (*Id.*). During psychometric testing, he was not well-motivated and often responded "I don't know" to test questions. (Tr. 366). Dr. Leisgang opined that plaintiff's general level of intelligence fell within the low average range. (*Id.*). Plaintiff's short-term memory skills were limited as he could recall four digits forward but only two digits backward.

7

(*Id.*). Plaintiff received a verbal comprehension index score of 54, a perceptual reasoning index score of 58, a working memory score of 58, a processing speed index score of 53, and a full-scale IQ score of 50. (Tr. 367). Dr. Leisgang reported that the test results did not appear to be a valid reflection of plaintiff's true abilities. (*Id.*). She opined that plaintiff's test results were "invalid due to his poor motivation" and therefore declined to interpret the test results. (*Id.*). Dr. Leisgang noted that plaintiff "did not appear to be a reliable historian. He often responded 'I don't know' to questions and may have exaggerated his difficulties to some degree." (Tr. 368). Dr. Leisgang could not opine with psychological certainty whether plaintiff suffered from a psychiatric disorder "given [plaintiff's] poor effort during psychometric testing and his possible exaggeration of his difficulties." (*Id.*).

In January 2014, plaintiff underwent another psychological evaluation at the request of the state agency with Andrea L. Johnson, Psy.D. (Tr. 372-77). Plaintiff reported a history of difficulty in maintaining adequate pace at past jobs and interacting with supervisors, coworkers, and customers. (Tr. 374). Dr. Johnson opined that plaintiff was likely to have significant difficulties with job-related tasks due to mental health problems. (*Id.*). Plaintiff received a verbal comprehension index score of 56, a perceptual reasoning index score of 77, a working memory index score of 60, a processing speed index score of 65, and a full-scale IQ score of 59. (Tr. 375). Dr. Johnson noted that plaintiff's "inconsistent effort and motivation on verbal tasks" may have contributed to his low IQ scores, but the "inconsistent effort and motivation may also be due to his history of problems with academic tasks." (*Id.*). During the mental status examination, plaintiff was noticeably anxious with a congruent affect. (*Id.*). His thought processes were logical, organized, coherent, and goal-directed. (*Id.*). Plaintiff endorsed symptoms of depression, including labile mood and irritability. (*Id.*). Plaintiff was able to

correctly recall four digits forward and three digits backwards. (Tr. 376). Plaintiff was able to understand and follow directions and performed below average on memory/recall tasks. (*Id.*). Dr. Johnson noted that plaintiff's cognitive functioning was in the borderline range of ability. (*Id.*). Dr. Johnson indicated that plaintiff appeared "cognitively and psychologically capable of living independently and of making decisions about the future." (*Id.*). Dr. Johnson assessed generalized anxiety disorder, mild intellectual disability, and specific learning disorder with impairment in reading. (Tr. 376-77). Dr. Johnson noted that plaintiff was "likely to show a pattern of periods of time away from work due to mental health issues." (Tr. 377). She also reported that plaintiff is "unable to respond appropriately to work stressors and situations." (*Id.*).

Throughout 2014 and 2015, plaintiff received treatment from Dr. Peter Boxer, M.D., at Community First Solutions. (Tr. 407-428). On October 14, 2014 and November 5, 2014, plaintiff reported no improvement in his mood or anxiety despite taking medications as prescribed. (Tr. 426-430). Dr. Boxer assessed bipolar disorder and generalized anxiety disorder. (Tr. 429-30). On November 28, 2014, plaintiff reported a constant state of anxiety, as well as tremulousness. (Tr. 426). Plaintiff reported no current problems with his mood. (*Id.*). Dr. Boxer adjusted plaintiff's medications. (*Id.*). On December 11, 2014, plaintiff reported feeling "a lot better" and much calmer with a very good mood. (Tr. 424-25). On January 15, 2015, plaintiff reported that his anxiety level was significantly lower since being prescribed a higher dosage of his medication, though he still avoided most social situations. (Tr. 421). On February 12, 2015, plaintiff reported having anger management issues. (Tr. 420). Dr. Boxer recommended that plaintiff make an appointment with his new therapist. (*Id.*). On April 9, 2015, plaintiff reported feeling depressed for a few days as a result of family stressors, but then feeling fine. (Tr. 417). On June 16, 2015, plaintiff reported that he was doing fine, but did not

9

like being around people. (Tr. 415). Plaintiff also reported that his anxiety level was well-controlled. (*Id.*). On August 17, 2015, plaintiff stated that he felt more irritable and like he could "snap." (Tr. 412). On September 16, 2015, plaintiff reported that he was doing very well on his current medications. (Tr. 410).

Plaintiff underwent another psychiatric evaluation in May 2014 at LifeSpan, Inc. (Tr. 399-402). Although the treatment notes are difficult to read, the physician who conducted the evaluation indicated that plaintiff continued to have mood swings, anxiety, and paranoia around people. (Tr. 401). The physician noted that plaintiff also had bipolar disorder and could not function without his medications. (*Id.*).

Plaintiff began receiving counseling and case management services from Colleen Reilly, Mental Health Clinician, at Community Behavioral, Inc., in December 2014. In a letter dated December 10, 2015, Ms. Reilly reported:

> [Plaintiff] has received counseling and case management services from said clinician since December of 2014. [Plaintiff] shows signs and symptoms of Bipolar Disorder due to periods of abnormally and persistently elevated, expansive, or irritable mood and abnormally and persistently increased activity or energy. [Plaintiff] has difficulty sleeping without medication and will have bouts of Depressive episodes. [Plaintiff] was placed in learning disabled courses all throughout his education and is still incapable of reading or writing. [Plaintiff] has difficulties in social settings due to his lack of trust; specifically for the male population. [Plaintiff] presents with Agoraphobia due to increased isolation and lack of ability to be placed in social situations.

(Tr. 535).

On February 9, 2016, plaintiff underwent a psychological evaluation with Angela Ledgerwood, Ph.D., at CDC Mental Health Services. (Tr. 537-39). Dr. Ledgerwood conducted IQ testing, as well as a 30-minute clinical interview. (Tr. 537). During the interview, plaintiff was cooperative and polite. (*Id.*). During the testing, plaintiff responded well to encouragement and appeared to be putting forth good effort throughout both tests. (*Id.*). Plaintiff reported

having attempted IQ testing two years prior, but he indicated that he did not understand the testing. (*Id.*). Plaintiff reported being unable to read, spell, or do math beyond basic addition and subtraction. (Tr. 538). Plaintiff reported having been diagnosed with bipolar disorder, "bad nerves," and anxiety and taking medications for these conditions. (*Id.*). Plaintiff stated that he was happy with the therapy and medical somatic services he was receiving at Community Behavioral Health. (*Id.*). During IQ testing, plaintiff received a perceptual reasoning index score of 77, which fell in the borderline range of cognitive functioning. (*Id.*). This score measures an individual's ability to reason with, analyze, and synthesize nonverbal visual stimuli, which proved to be an area of relative strength for plaintiff. (Tr. 539). Plaintiff's processing speed index score of 65, working memory index score of 63, and verbal comprehension index score of 54 fell within the extremely low range of cognitive functioning. (Tr. 538-39). Plaintiff's full-scale IQ could not be computed because it was "not expected to be an accurate reflection of [plaintiff]'s abilities given the multiple significant differences between Indices." (Tr. 539). Dr. Ledgerwood explained that the test results suggested that borderline intellectual functioning may be the focus of clinical attention. (*Id.*).

**B. The parties' arguments**

Plaintiff argues that his mental impairments meet, or at least medically equal, Listing 12.05C. Plaintiff argues that his school records prove that he has a significantly subaverage general intellectual functioning with deficits in adaptive functioning which manifested prior to age 22. (Doc. 16 at 9). Specifically, plaintiff argues that his school records and IQ scores prior to age 22 confirm a significant history of learning disability and difficulties with reading, writing, and math. (*Id.*) (citing Tr. 320-21, 327, 329-30, 334-35, 343, 538). Plaintiff argues that the record also demonstrates a lack of personal independence prior to age 22, which also

suggests deficits in adaptive functioning, including that he struggled significantly in school even with assistance and that he was dependent on family for basic needs such as getting dressed. (*Id.* at 10) (citing Tr. 335).[3] Further, plaintiff argues that his IQ scores from both childhood and adulthood prove that he meets or equals Listing 12.05C. (*Id.*). Plaintiff also argues that his severe impairments of anxiety disorder, depressive disorder, and bipolar disorder impose additional and significant work-related limitations as required by the Listing. (*Id.* at 11). Plaintiff further argues that the ALJ erred in not consulting with a medical expert to evaluate whether his mental impairment medically equals Listing 12.05C.

In response, the Commissioner argues that the ALJ reasonably concluded that plaintiff did not meet or medically equal Listing 12.05C and thoroughly considered the evidence in the record. (Doc. 19 at 2-3). The Commissioner argues that the ALJ relied on plaintiff's IQ scores prior to age 22, as well as plaintiff's school records documenting his learning disability, to show that he did not have significant subaverage intellectual functioning with deficits in adaptive functioning prior to age 22. (*Id.* at 3). The Commissioner argues: "[p]laintiff points to no other evidence from prior to age 22 showing that he had adaptive functioning deficits, and there is no indication that [p]laintiff was unable to complete basic activities of daily living." (*Id.* at 4). The Commissioner contends that the ALJ was not required to obtain an updated expert opinion regarding whether plaintiff medically equaled Listing 12.05C, and the ALJ did review opinions from medical experts who opined that plaintiff did not meet or medically equal a listing. (*Id.*) (citing Tr. 31-32).

---

[3] Plaintiff's characterization of this evidence is not accurate. The school psychologist's report states that plaintiff, who was 15 years old, was "still dependent on his family for many things such as health care, choice of clothes, and care of clothing." (Tr. 335).

12

## C. Listing 12.05C

Listing 12.05 contains an introductory paragraph with the diagnostic description of "intellectual disability" and four sets of criteria set forth in paragraphs (A)-(D). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. If an individual's intellectual disability satisfies the diagnostic description in the introductory paragraph and any of the four sets of criteria set forth in Listing 12.05(A)-(D), then the individual's impairment will be found to meet the Listing. *Id.* The introductory paragraph defines "intellectual disability" as follows:

> [I]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

*Id.* Thus, to satisfy Listing 12.05, the claimant must introduce evidence that he experienced deficiencies in adaptive functioning and that such deficiencies arose during the developmental period. *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *Carmack v. Barnhart*, 147 F. App'x 557, 560-61 (6th Cir. 2005)). "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *Id.* (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). *See also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) ("The American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'") (quoting Diagnostic and Statistical Manual of Mental Disorders, p. 49 (4th ed. 2000)).

Paragraph C requires the following criteria:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. A claimant must therefore make three showings to satisfy Listing 12.05C: (1) he "experiences 'significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period' (*i.e.*, the diagnostic description)"; (2) he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *West*, 240 F. App'x at 697-98 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; *Foster*, 279 F.3d at 354-55; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)). For purposes of Listing 12.05C, the Social Security regulations direct that the lowest score of an IQ test's multiple components be used: "Where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00.

### D. Resolution

In this case, the ALJ determined that plaintiff does not have a valid IQ score that satisfies the requirements of Listing 12.05C. The ALJ conducted his analysis as follows:

> In order to satisfy 12.05C, the [plaintiff] must have a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function. The medical evidence of record fails to demonstrate satisfaction of . . . 12.05C. In fact, in December 1973, at the age of 9, he scored a Verbal I.Q. of 84, a Performance I.Q. of 87, and a Full Scale I.Q. of 84 (1F/7). In October 1975, at the age of twelve, he scored a Verbal I.Q. of 724 [sic], a Performance I.Q. of 90, and a Full Scale I.Q. of 80 (1F/16). In March 1979, at the age of fifteen, he scored a Verbal I.Q. of 72 a Performance I.Q. of 91, and a Full Scale I.Q. of 80 (1F/20). In March 2013, at the age of forty-eight, he scored 54 on a Verbal Comprehension Index, and a Full Scale I.Q. of 50 (4F/5). However, the psychologist who administered the tests found that the scores were invalid due to poor motivation (*Id.*). In January 2014, at the age of forty-nine, he scored 56 on a Verbal Comprehension Index, and a Full Scale I.Q. of 59 (5F/3-4). The clinical psychologist who administered the exam again reported

that [his] inconsistent effort and motivation on verbal tasks may have contributed to his score. (*Id.*). In February 2016, at the age of fifty-one, he scored 54 on a Verbal Comprehension Index, and his Full Scale I.Q. score could not be computed due to the significant differences between his Indices (14F/2-3). Additionally, the [plaintiff] does not have any physical or mental impairment that imposes an additional and significant work-related limitation on functioning.

(Tr. 26).

The ALJ gave good reasons, supported by the record, for determining that plaintiff's IQ scores obtained as an adult were not valid. Prior to age 22, IQ testing on three separate occasions revealed IQ scores consistently above Listing level. (Tr. 26). The ALJ properly rejected plaintiff's lower IQ scores as an adult from 2013, 2014, and 2016, which ranged from 50-60. In rejecting these IQ scores, the ALJ reasonably relied on the expert opinions of Drs. Leisgang, Johnson, and Ledgerwood that the scores were not an accurate reflection of plaintiff's true abilities and were invalid as a result of plaintiff's poor motivation and exaggeration. (Tr. 367, 375, 539). *See Lipford v. Sec'y of Health & Human Servs.*, 762 F.2d 1009 (6th Cir. 1985) (substantial evidence supported the ALJ's conclusion that plaintiff did not meet Listings 12.05B and 12.05C where psychologist opined that plaintiff's IQ score was invalid due to poor motivation and "I don't know" responses to most test questions). Moreover, based on their evaluations, these psychologists suggested that plaintiff's cognitive functioning generally fell within the borderline range of intellectual functioning. (Tr. 366—Dr. Leisgang opined that plaintiff's general level of intelligence fell within the low average range; Tr. 376—Dr. Johnson opined that plaintiff appeared to be of borderline intelligence; Tr. 539—Dr. Ledgerwood suggested that borderline intellectual functioning is a condition that may be the focus of plaintiff's clinical attention). Plaintiff also performed a number of activities inconsistent with a listing level intellectual disability. As the ALJ noted, plaintiff performed activities of daily living such as cleaning, shopping, cooking, taking public transportation, paying bills,

15

maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office. (Tr. 23). Plaintiff was able to prepare his own meals, watch television, camp, and fish. (*Id.*). Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff did not meet the requirements of Listing 12.05C.

In assessing Listing 12.05C, the ALJ also determined that plaintiff "does not have any physical or mental impairment that imposes an additional and significant work-related limitation on functioning." (Tr. 26). Plaintiff argues that the ALJ conducted an improper analysis on this requirement of Listing 12.05C, as well as whether he had deficits in adaptive functioning which manifested prior to age 22. The Court concludes that any error in the ALJ's remaining analysis as to Listing 12.05C is harmless. As explained above, plaintiff did not present a valid IQ score to satisfy the Listing and the ALJ's determination on this issue is supported by substantial evidence.

Finally, plaintiff argues that the ALJ should have ordered additional medical expert testimony to address whether plaintiff's impairments equaled Listing 12.05C and to "clarify the complex issues presented including the various IQ tests performed both before and after age 22, the consistency in these tests, the significant learning disabilities documented by the record and Plaintiff's obvious ongoing intellectual deficits." (Doc. 16 at 13). Under Social Security Ruling 96-6p, which plaintiff cites as support, an ALJ is required to obtain an updated medical opinion from a medical expert in two circumstances: (1) when no additional medical evidence is received, but in the opinion of the ALJ the symptoms, signs, and laboratory findings in the record suggest that a judgment of equivalence may be reasonable; or (2) when additional medical evidence is received that in the opinion of the ALJ may change the state agency medical consultant's finding that the impairment is not equivalent in severity to the listed impairment.

16

SSR 96-6p, 1996 WL 374180, at *4. SSR 96–6p thus requires the ALJ to obtain an updated medical opinion "*only* when the ALJ believes the evidence could change a medical consultant's finding that the impairment is not equivalent to a listed impairment." *Courter v. Commissioner of Social Sec.*, No. 10-6119, 2012 WL 1592750, at *9 (6th Cir. May 7, 2012) (citation omitted). Here, the ALJ had discretion on whether to call a medical expert. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009). The ALJ in this case thoroughly reviewed the opinions of several medical experts at the initial and reconsideration levels, all of whom stated that plaintiff did not meet or medically equal any of the listings. (Tr. 31-32). Because the additional medical evidence submitted after the state agency psychologists rendered their opinions suggests that plaintiff's IQ scores were not valid and plaintiff's cognitive functioning fell in the borderline range of intelligence, the ALJ acted within his discretion and did not err in failing to order an opinion from an additional medical expert.

The ALJ's finding that Listing 12.05C is not satisfied based on plaintiff's lack of qualifying IQ score should be upheld. Plaintiff's first assignment of error is overruled.

## 2. Whether the ALJ erred in failing to obtain plaintiff's disability record from 1993.

Plaintiff states that he was previously awarded SSI benefits in May 1993 and these benefits were terminated in January 1998. (Doc. 16 at 13). Plaintiff states that he was awarded the benefits under Listing 12.05. (*Id.* at 13-14). Plaintiff contends that the ALJ had a duty to obtain the prior claim file because "such a finding is significant to the period at issue, and the doctrine of collateral estoppel could apply." (*Id.* at 14). Plaintiff cites to HALLEX I-2-1-13[4] in

---

[4] The HALLEX is a procedural manual utilized by the Commissioner "that sets forth safeguards and procedures for these administrative proceedings." *Robinson v. Barnhart*, 124 F. App'x 405, 410 (6th Cir. 2005). While HALLEX provisions are binding on the Social Security Administration, they are not binding on reviewing courts. *Bowie*, 539 F.3d at 399. The HALLEX provision in question is available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-1-13.html.

17

support of his argument and contends that in some cases, it is necessary for the ALJ to review a prior claim file in order to fully adjudicate a current claim. (*Id.* at 14-15).

In response, the Commissioner maintains that plaintiff's previous claim was granted based on substance abuse disorder, namely alcoholism. (Doc. 19 at 6) (citing Tr. 119). Thus, the Commissioner argues that there is no indication that the claim from 1993 "would have any bearing on his current application, as that claim was not premised on his intellectual disability." (*Id.*).

HALLEX I-2-1-13 provides, in relevant part:

An ALJ will generally find that evidence in a prior claim(s) file is necessary for a full adjudication of the issues when the ALJ determines:

- There is a need to establish a longitudinal medical, educational, or vocational history; or
- The impairment is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether disability is present in the current claim.

HALLEX I-2-1-13(B)(2). "The plain meaning of this language did not impose a mandatory procedural requirement on the ALJ." *Richards v. Colvin*, No. 3:14-cv-00094, 2015 WL 136227, at *5 (S.D. Ohio Jan. 9, 2015), *adopted*, *Richards v. Comm'r of Soc. Sec.*, 2015 WL 1468331 (S.D. Ohio Mar. 30, 2015). In any event, "the failure to comply with HALLEX, by itself, does not provide grounds for remand by a reviewing court." *Smith v. Comm'r of Soc. Sec.*, No. CV 17-12056, 2018 WL 3750971, at *13 (E.D. Mich. July 16, 2018), *adopted*, 2018 WL 3742018 (E.D. Mich. Aug. 7, 2018).

Here, other than arguing that he was previously awarded benefits under Listing 12.05, plaintiff has made no argument or provided any evidence that his impairments from 1993 are of similar severity or nature as his mental impairments in the present case. Nor has plaintiff provided any evidence of how his prior claim file could substantiate his claim in the present case.

Moreover, as the Commissioner correctly notes, the record conclusively establishes that plaintiff was awarded disability benefits in 1992 for alcohol addiction. (Tr. 88, 119). As such, it is unclear how the prior claim file would relate to the present case. Moreover, to the extent plaintiff argues that the ALJ had a duty to more fully develop the record in this case (Doc. 16 at 14), his argument is not well-taken. Plaintiff was represented by counsel during the ALJ hearing and bore the ultimate responsibility of producing the existence of a disability and producing the medical evidence necessary to substantiate his claim. *See Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). *See also Hackle v. Colvin*, No. 1:12-cv-145, 2013 WL 1412189, at *10-11 (S.D. Ohio April 8, 2013) (Beckwith, J.). Accordingly, plaintiff's second assignment of error is overruled.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner is **AFFIRMED** and this case is closed on the docket of the Court.

Date: 9/10/18

Karen L. Litkovitz
United States Magistrate Judge